IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-00879-RBJ-CBS

TRUSTESS OF THE COLORADO CEMENT MASONS' PENSION TRUST FUND,
TRUSTEES OF THE COLORADO CEMENT MASONS' JOINT APPRENTICESHIP TRUST FUND, and
TRUSTEES OF THE OPERATIVE PLASTERERS & CEMENT MASONS HEALTH BENEFIT FUND,

    Plaintiffs,

v.

M&R CONCRETE, INC., a Colorado corporation, and
M&R FLATWORK, INC., a Colorado corporation,

    Defendants.

## ORDER on PENDING MOTIONS

Plaintiffs, who are the trustees of three union trust funds, sue two concrete companies for their failure to make fringe benefit contributions as required by a collective bargaining agreement. They also seek to compel production of certain records and an accounting. Federal jurisdiction under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(e), the Labor Management Relations Act, 29 U.S.C. § 185, and 28 U.S.C. §§ 1331 and 1337 is not disputed. Pending are (1) defendants motion to dismiss the claims brought on behalf of two of the funds [docket #11]; defendant M&R Flatwork's motion for summary judgment [#13]; and (3) defendants' motion to strike the affidavit of Kevin Meza that was submitted in support of plaintiff's response to the motion to dismiss. [# 27].

**Facts**

Plaintiffs allege that Jesse Marquez is the "principal officer and consulting shareholder" of M&R Concrete, Inc. ("Concrete") and M&R Flatwork, Inc. ("Flatwork"). In 1995 Mr. Marquez executed a collective bargaining agreement ("CBA") with the Operative Plasterers and Cement Masons Local Union #577 on behalf of Concrete, and by so doing committed Concrete to contribute to the three funds and to abide by the terms of the trust agreements. However, Concrete has failed to report and pay required fringe benefit contributions beginning in January 2004 or to permit the trustees to audit Concrete's payroll records.

Flatwork is not a signatory to the CBA. However, plaintiff alleges, "upon information and belief," that Concrete and Flatwork have the same principal place of business, ownership, method of business operation, and perform the same type of construction work. Plaintiff alleges, again "upon information and belief," that Concrete and Flatwork have conducted business in a way that demonstrates a unity of interest and a lack of separation and distinction between them. Accordingly, plaintiff alleges that Flatwork is the alter ego of Concrete and is therefore bound to the terms of the CBA and the trust agreements.

The parties both agree that the CBA [#11-1], which is referenced in and central to the complaint, may be considered by the Court in regard to each of the pending motions. It identifies three trust funds to which parties to the CBA must make payments, provide reports, etc.: Colorado Laborers Health and Welfare Trust Fund; Colorado Cement Masons Pension Trust Fund; and Colorado Cement Masons Apprentice Trust Fund. *Id.,* Article XV(A).

**Conclusions.**

Defendants' Partial Motion to Dismiss [#11].

Defendants argue that because two of the three plaintiff trust funds are not named in the CBA, their claims must be dismissed. Plaintiffs respond that the apprenticeship fund listed in the CBA is the "shorter version" of the plaintiff apprenticeship's name, and that the health funds have different names because the plaintiff health fund was swapped for the health fund listed in the CBA. Plaintiffs submit an affidavit of Kevin Meza, the Denver branch manager of the trust funds' third-party administrator, in support of their response. [#20-1].

Technically defendant is right. The Meza affidavit is not appropriately submitted or referenced in opposition to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The complaint, while liberally construed in plaintiffs' favor for this purpose, stands on its own. Given that the only document outside the four corners of the complaint to which the Court can refer at this stage is the CBA, the fact is that it does appear to list two of the three trust funds. I assume that plaintiff's explanation of how the two funds are in fact covered by the CBA can be easily incorporated into an amended complaint, and in that sense the motion accomplishes little. Nevertheless, the Court grants the motion with leave to amend.

Defendant M&R Flatwork's Motion for Summary Judgment [#13].

Flatwork denies that it is the alter ego of Concrete, supporting the denial with the affidavit of Mr. Marquez [#13-1]. According to him, Concrete historically engaged in two types of concrete business: installing foundations and flatwork. Flatwork is such things as sidewalks, curbs and gutters, drain pans, handicap ramps and other non-structural items. *Id.* ¶3. He and the co-owner of Concrete incorporated Flatwork in 2003 in order to reduce Concrete's liability insurance costs. Since the Spring of 2004 Concrete has done solely foundation work, and

Flatwork has done solely flatwork. *Id.* ¶4. He acknowledges that Flatwork and Concrete have had the same officers and shareholders, that they have operated out of the same offices, and that they have utilized the same officer manager and bookkeeper. However, they have had separate lines of business, field superintendents, laborers, equipment, bank accounts, payrolls, tax returns and corporate reports. The co-owners receive separate paychecks from the two companies. *Id.* ¶5.

Mr. Marquez further states that Concrete stopped making contributions to the union trust funds in 2004, because it was no longer doing flatwork and had no union employees. Flatwork then began to make "voluntary" contributions for union members who formerly worked for Concrete and now worked for Flatwork. This continued through July 2010, but by August 2010 Flatwork no longer had union employees and, therefore, it stopped making contributions to the trust funds. *Id.* ¶7.

"The alter ego doctrine is an equitable doctrine developed to prevent employers from evading obligations under the National Labor Relations Act merely by changing or altering their corporate form." *Trustees of the Detroit Carpenters Fringe Benefit Funds v. Industrial Contracting, LLC*, 581 F.3d 313, 317-18 (6th Cir. 2009)(internal quotations omitted). "The key factors in an alter ego analysis are whether the two organizations have substantially identical management, business purposes, operation, equipment, customers and supervision, as well as ownership." *Trafford Distribution Center v. N.L.R.B.*, 478 F.3d 172, 179 (3d Cir. 2007)(internal quotations omitted). Courts need not find every factor to determine one entity is the alter ego of the other. *Ibid*; *see Detroit Carpenters*, 581 F.3d at 318. Additionally, the Court should look at whether Flatwork was created to avoid Concrete's legal obligations under the CBA. *Lihli Fashions Corp., Inc. v. N.L.R.B.*, 80 F.3d 743, 748 (2d Cir. 1996).

4

Plaintiffs incorporate Mr. Meza's affidavit attached to their response to the motion to dismiss. While inadmissible with regard to the motion to dismiss it is appropriately considered in relation to the motion for summary judgment. However, the affidavit and other attachments do little to influence the alter ego discussion. Mr. Meza is the branch manager of the third-party administrator of Colorado Cement Masons' Trust Funds, but he is not and did not claim to be, in a position to discuss defendants' daily operations or the extent of their interconnectedness.

Instead plaintiffs repeatedly argue that they lack the necessary information to rebut defendant's position, because "no discovery has either been scheduled, or conducted and no disclosures have been made by either party at this time." The Court notes that the present motion was filed roughly 45 days after the Complaint. That said, plaintiffs did not invoke the procedure set forth at Fed. R. Civ. P. 56(d). *See West v. Yeaton*, No. 09CV1268, 2011 WL 42140, at *2 n.6 (D. Colo., January 6, 2011).

Therefore, the Court is left with Flatwork's position, supported by the Marquez affidavit. The affidavit establishes the generally separate nature of the two businesses and that, rather than creating Flatwork to avoid Concrete's obligations under the CBA, Flatwork continued to make voluntary contributions to the Funds until it no longer employed union workers. Plaintiffs have not demonstrated that there is a genuine dispute of material fact concerning the alter ego theory. In their response plaintiffs offer an alternative theory, i.e., that Flatwork "became bound to the terms of the collective bargaining agreement as a result of its consistent course of conduct." Response [#25] at 7. However, the Court cannot here consider a claim that was not pled in the complaint and was first raised in response to the present motion. *Bruner v. Baker*, 506 F.3d 1021, 1030 (10th Cir. 2007).

<u>Defendants' Motion to Strike the Affidavit of Kevin Meza [#27]</u>.

As indicated above, the affidavit may not be used in response to the Rule 12(b)(6) motion. That is all that motion #27 addresses.

**Order.**

1. Motion #11 is GRANTED.
2. Motion #13 is GRANTED.
3. Motion #27 is GRANTED

DATED this 16th day of April, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge